IN THE UNITED STATES DISTRICT COURT **FILED**
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUN 2 2005



JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

CHARLES GRIFFIN,

    Plaintiff,

v.

DAUBERT CHEMICAL CO., INC.,

    Defendant.

Case No. 04 C 2042

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff Charles Griffin, an African-American male, filed a six-count complaint against Defendant Daubert Chemical Company for race harassment (Counts I and II), race discrimination (Counts III and IV), and retaliation (Counts V and VI) under Title VII and 42 U.S.C. § 1981. Before the Court are the Defendant's Motion for Summary Judgment and the parties' Cross-Motions to Strike. The Court does not specifically cite to the record in evaluating the motions because a large part of the record was filed under seal.

### I.  BACKGROUND

#### A.  Employment Description

Defendant hired Plaintiff as a maintenance welder and repairman beginning on or around March 9, 2000, and he remains an employee to date. Since his date of hire, four of his five performance reviews have indicated that Plaintiff met Defendant's overall standards. Only Plaintiff's most recent review (January

2004) indicated that he had "some improvement needed," and Defendant placed him on a wellness plan. Defendant also has placed three Caucasian employees with similar reviews on wellness plans.

Plaintiff has consistently been the third highest paid employee in the maintenance department. Since he was hired, Plaintiff has received four pay raises: December 2000, January 2002, January 2003, and January 2004. Plaintiff was also the maintenance department employee with the highest overtime pay in December 2003 and January 2004, and had the second highest amount of overtime overall in 2003. Plaintiff did not receive any overtime in February 2004, but was only eligible for overtime during two weeks of the month.

## B. Allegations

In his second amended complaint (the "complaint"), Plaintiff alleges that Caucasian co-workers and supervisors continuously made racially derogatory comments to him. Specifically, Plaintiff alleges that Caucasian co-workers called him a "nigger" and "coon" on a daily basis; humiliated him on a daily basis; said "I can't see you. You're too dark"; said "who put a quarter in you" when he tried to speak; said "some Blacks are just niggers and coons"; wore a shirt with the word "Klan" displayed; told him to make a "barbeque grill, nigger"; said "you can pull that mask off, Halloween is over"; said "I don't wanna be a brother, I want to be a police officer so I can beat down black people"; asked if he was

- 2 -

"trying to turn himself white" when he was covered by PVC dust; and taped a pornographic picture to his locker. Plaintiff also alleges that Supervisor Rob Sobkowiak said once, "I wouldn't go to Indiana that is where the Klan's headquarters are" and asked him on multiple occasions if he was "on crack" cocaine.

Defendant disputes nearly all of these allegations. Based on the parties' submissions, only the following allegations are undisputed. Supervisor Rob Sobkowiak testified that asked Plaintiff and the other maintenance employees (including Caucasians) if they were "on crack." Co-worker Greg Kozicki admitted that on a few occasions before and after his shift, he wore a T-shirt with a hooded figure on it, which said "Clan." Kozicki testified that the shirt was for his baseball team and referred to an Irish clan. After learning of the shirt, Defendant suspended Kozicki for three days, gave him six months probation, and documented the incident in his personnel file. Defendant also suspended other employees for failing to report the shirt. Finally, co-worker Patrick Sherrick admitted that he said once that he "want[ed] to be a police officer so [he] c[ould] beat gangbangers" and that he may have added "black people." As a result, Defendant suspended Sherrick for five days without pay and provided him additional harassment training. Defendant disputes the complaint's remaining allegations, as well as similar allegations from the Statement of Additional Facts.

Beginning on April 8, 2002, Plaintiff contends that he complained to various supervisors about his co-workers' actions, including Sobkowiak (his direct supervisor), Mark Palmer (a supervisor), Brian Bell (Plant Manager), Mark Pawelski (Vice President), and Ginny Winkle (Corporate Human Resources). Defendant acknowledges that Plaintiff met with these individuals and complained about his employment, but denies the substance of the complaints. The supervisors testified that Plaintiff never complained to them or mentioned the alleged race-based comments and actions of his co-workers. To the contrary, Defendant contends that in these meetings, Plaintiff only complained about his workload, job assignments, the lack of opportunity to express repair ideas, and that he and Patrick Adams (a Caucasian employee) received more "dirty jobs" than other workers. Defendant insists that it did not learn of any of Plaintiff's racial harassment, discrimination, or retaliation complaints until after it received Plaintiff's EEOC charge in February 2004.

## C. Suspensions

On September 17, 2003, Plaintiff punched in at 6:00 a.m. He went to the boiler room with coffee, a McMuffin, and a newspaper. At approximately 6:35 a.m., supervisor Palmer made rounds at the plant and could not locate Plaintiff. He looked in the boiler room and found Plaintiff reading the newspaper, eating, and drinking coffee. At that time, Plaintiff was not on break and had not been

instructed to check the salt dispenser in the boiler room. Palmer told Plaintiff to punch out and go home. Plaintiff left before 7:00 a.m. and was suspended for one day. Plaintiff acknowledges that under company policy, employees are not allowed to read the newspaper or eat unless they are on a break. Plaintiff contends that the rule is inequitably enforced.

On October 14, 2003, Plaintiff was paid for the entire day and worked an extra hour of overtime. He spent roughly four hours that day (from 9:00 a.m. until approximately 1:00 p.m.) on a personal project -- he built a barbeque grill. That morning, Sobkowiak observed Plaintiff cutting a drum. Plaintiff asked Sobkowiak if he could take the drum home, and Sobkowiak agreed. Due to this interaction, Plaintiff contends that Sobkowiak knew about the grill. Sobkowiak testified that he did not know until later in the day that Plaintiff was using the drum to build a grill on company time. Regardless, Plaintiff testified in his deposition that he did not seek or receive permission to build the grill on company time. Sobkowiak and Brian Bell confronted Plaintiff at the end of the day about the grill, and suspended him for five days.

## D. EEOC Charge and Response

Plaintiff filed an EEOC charge on January 15, 2004 alleging race discrimination and retaliation, alleging he had been

subjected to a hostile-work environment based on my race, including . . . racially derogatory remarks and . . . disparate terms and conditions of my employment compared to my similarly situated non-African American co-

- 5 -

workers . . . I have been called a 'nigger' and a 'coon' on several occasions and many times when I have complained to my supervisors about the remarks they are dismissed as jokes. However, soon after making complaints about the harassing remarks, I have been falsely disciplined for reading the paper while other non-African American co-workers are not discipline [sic] for reading the paper.

After receiving the EEOC charge in late February 2004, Defendant commenced an investigation and enacted several changes. It hired an independent investigator to interview Plaintiff's coworkers regarding his allegations; disciplined and suspended several employees; implemented additional discrimination and harassment training; and held mandatory individual harassment training sessions for specific employees.

## II. **LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" if it could affect the outcome of the suit under the governing law; a dispute is "genuine" where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The burden is initially upon the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In assessing the movant's claim, the court

- 6 -

must view all the evidence and any reasonable inferences that may be drawn from that evidence in the light most favorable to the nonmovant. *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000).

## III. **DISCUSSION**

### A. **Motions to Strike**

Plaintiff and Defendant have filed dueling motions to strike portions of each other's Local Rule 56.1 submissions. Rule 56.1 "serves the important function of structuring the summary judgment process so as to 'assist the court by organizing the evidence, identifying undisputed facts, and demonstrating precisely whose each side propose[s] to prove a disputed fact with material evidence." *Menasha Corp. v. News Am. Mktg. In-Store*, 238 F. Supp. 2d 1024, 1029 (N.D. Ill. 2003)(quoting *Markham v. White*, 172 F.3d 486, 490 (7th Cir. 1999)). The statements and responses should "contain only the _material_ facts. They are not a proper place to present legal arguments or conclusions. . . ." *Gizaw v. Ill. Dept. of Public Aid*, No. 02 C 5862, 2004 WL 421958, at *4 (N.D. Ill. Feb. 13, 2004)(emphasis added).

Defendant submitted 413 numbered statements in its Rule 56.1(a)(3) Statement of Material Facts. Plaintiff responded, and also included 246 numbered statements in its Rule 56.1(b)(3)(B) Statement of Additional Facts. Defendant responded, and then added 314 reply statements to Plaintiff's responses to Defendant's

- 7 -

56.1(a) Statement of Material Facts. Defendant now moves to strike paragraphs 494-505, 542-565, and 652-659 of Plaintiff's Statement of Additional Facts as immaterial and irrelevant. Plaintiff moves to strike Defendant's 314 reply statements in their entirety as impermissible under Rule 56.1.

Here, both parties submitted voluminous materials in addition to hundreds of asserted "material" facts -- a large portion of which were repetitive, contradictory, hearsay, or not material. In ruling on Defendant's Motion for Summary Judgment, the Court disregards all argumentative, conclusory, unsupported, inadmissible, or otherwise non-conforming portions of the respective Rule 56.1 statements. For example, the Court did not consider Plaintiff's asserted facts regarding his FMLA leave request because they are immaterial to the complaint's claims for race harassment, discrimination, and retaliation, and are not referenced in, or substantially related to, the allegations in Plaintiff's EEOC charge. Accordingly, the parties' motions to strike are unnecessary, and such motions are **DENIED AS MOOT.**

## B. **Summary Judgment Motion**

### 1. *Race Harassment Claims*

Counts I and II of Plaintiff's complaint present race harassment claims pursuant to Title VII and 42 U.S.C. § 1981. The Court addresses these two counts simultaneously. *See Herron v. Daimler Chrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004)("Because

- 8 -

we evaluate § 1981 claims under the same rubric as Title VII claims, we need not address them separately."). Plaintiff alleges his co-workers created a hostile work environment through their race-based words and actions. To survive summary judgment, "an employee alleging racial harassment must show: (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability." *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004). Defendant contends that Plaintiff has failed to establish elements two through four.

As to element two, Defendant denies that any employees called Plaintiff express racial epithets, such as "nigger" or "coon." Defendant further contends that Plaintiff's remaining allegations are uncorroborated or not based upon race. For example, Sobkowiak testified that he also asked Caucasian maintenance department employees if they were "on crack." Similarly, Caucasian employees testified that they had been asked "who put a quarter in you." Defendant argues other alleged statements were not racial if considered in context - the use of the word "coon" in a discussion about racoons in a garage, and the "pull the mask off" comment said once around Halloween.

- 9 -

As discussed *supra*, the vast majority of Plaintiff's factual allegations are disputed. One undisputed allegation, however, is that a co-worker wore a "Clan" T-shirt with a hooded figure in Plaintiff's presence. The Court must carefully consider "the social context in which particular behavior occurs and is experienced by its target . . . [T]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998). Taking the allegations in the light most favorable to Plaintiff, a reasonable jury could find that the shirt, when combined with the other allegations, was a harassing comment based on race. Accordingly, Plaintiff meets element two for summary judgment purposes.

The Court next addresses element three, whether the alleged harassment created a hostile environment. Plaintiff must establish that his workplace was both subjectively and objectively hostile, in that it was "sufficiently severe or pervasive as to alter the conditions of the victim's employment and to create an abusive working atmosphere." *Doe. V. R.R. Donnelley & Sons*, Co., 42 F.3d 439, 443 (7th Cir. 1994). The Court examines the totality of the circumstances, and considers the following relevant factors: the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems*, 510 U.S. 17 (1993).

What was said, how frequently, and by whom, are genuine material facts that are at issue in this case. Interpreting Plaintiff's allegations in a light most favorable to him, as is required, the Court finds that material factual disputes exist on element three. The Court further notes material factual disputes exist on element four. Weighing evidence and evaluating the credibility of witnesses are issues for the trier of fact and a jury must evaluate the strength and weight of the evidence. *See Hawkins v. Groot Indus., Inc.*, No 01 C 1731, 2003 WL 1720069, at *3 (N.D. Ill. March 31, 2003). Accordingly, summary judgment is inappropriate on the race harassment claims and Defendant's Motion for Summary Judgment is **DENIED** on Counts I and II.

## 2. Race Discrimination Claims

Counts III and IV of Plaintiff's complaint present race discrimination claims pursuant to Title VII and 42 U.S.C. § 1981, which the Court addresses simultaneously. *See Herron*, 388 F.3d at 299. Two actions form the basis of his race discrimination claim: his September 2003 suspension for reading on company time; and his October 2003 suspension for building a barbeque grill on company time.

A plaintiff must prove race discrimination using either direct or indirect evidence. Plaintiff has not alleged direct evidence of race discrimination, and therefore, he must prove his claim under the indirect method. *See Daniels v. Federal Reserve Bank of Chicago*, No. 98 C. 1186, 2004 WL 419796, *8 (N.D. Ill. 2004). This method requires Plaintiff to present evidence establishing that: "(1) [he] was a member of a protected class; (2) [he] was qualified for the job in question or was meeting her employer's legitimate performance expectations; (3) [he] suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the class more favorably." *Foster v. Arthur Andersen*, 168 F.3d 1029, 1035 (7th Cir. 1999). If Plaintiff establishes each of these four elements, then the burden of production shifts to Defendant to identify a nondiscriminatory reason for the action taken. *See Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1011 (7th Cir. 2004). After Defendant establishes a valid reason, Plaintiff can avoid summary judgment only by producing evidence that Defendant's stated reason is merely pretextual. *See id.*

Elements one through three are undisputed. Defendant argues that Plaintiff's claims fail because he cannot meet element four -- "similarly situated." A similarly situated employee is "someone who is directly comparable to him in all material respects," *Grayson v. O'Neill*, 308 F.3d 808, 819 (7th Cir. 2002), including being "similarly situated with respect to performance,

qualifications, and conduct." *Radue v. Kimberly-Clark Corp.*, 219
F.3d 612, 617 (7th Cir. 2000).

### a. September Suspension

On September 17, 2003, Plaintiff admits that Mark Palmer
personally observed him eating and reading the paper in the boiler
room when he was not on a break. Plaintiff acknowledges that under
company policy, employees are not allowed to read the newspaper or
eat on company time, unless they are on break or at lunch. Palmer
told Plaintiff for clock out for the day and go home. Plaintiff
left by 7:00 a.m. (a one-day suspension).

Plaintiff alleges that Caucasian maintenance employees
regularly engaged in the same activity without discipline.
Plaintiff relies on co-workers Greg Kozicki and Pat Sherrick's
admissions that they have read the newspaper during work hours.
Plaintiff has not demonstrated that these employees are similarly
situated in that they "engaged in similar conduct without such
differentiating or mitigating circumstances as would distinguish
their conduct or the employer's treatment of them." *Radue*, 219
F.3d at 618. Plaintiff testified that he observed several co-
workers reading the newspaper on multiple occasions without
punishment. He makes conclusory, unsupported statements that some
employees were not on break on certain occasions that he observed
them. Plaintiff fails to allege or provide factual support to
establish that the conduct was similar to Plaintiff's -- the

employees were not on a break, a supervisor (let alone the same supervisor) personally saw them reading the paper, and the supervisor knew that they were not on break when observed reading. Plaintiff points to several instances of obviously dissimilar conduct, such as co-workers reading the paper _before_ a supervisor arrived at work. Further, Plaintiff admits that he did not report to anyone the alleged instances of co-workers misconduct on October 27, October 30, November 12, December 5, December 11, December 16, January 14, and January 21. Plaintiff also never provided to any supervisor the log he maintained of such alleged incidents.

Additionally, contrary to Plaintiff's contentions, a Caucasian maintenance department employee, Greg Kozicki, who also has Sobkowiak as supervisor, was disciplined (even more harshly) when a supervisor observed him engaging in the same conduct on company time. In 1990, Kozicki was disciplined on multiple occasions (a verbal warning, written warning, and _three_ day suspension) by the then-supervisor who personally observed him reading the newspaper. In 1996, Kozicki was again suspended for five days. Plaintiff tries to distinguish himself from Kozicki by arguing that he did not get a verbal warning before suspension. The record reflects otherwise. Seven days earlier, supervisor Palmer approached Plaintiff and asked him to fix a leak in a steam pipe. Plaintiff, who was trained to fix the pipe and was on company time, complained

and told Palmer to find another employee to fix it. Palmer testified that Plaintiff was eating and reading the newspaper at the time, which Plaintiff denies. Palmer verbally told Plaintiff that he did not want this to happen again (a warning), and informed Sobkowiak of the incident.

Plaintiff has not demonstrated that there exist any similarly situated employees outside the class whom Defendant treated more favorably. Therefore, Plaintiff has not made a *prima facie* case of race discrimination based upon the September suspension. Even if Plaintiff had made a *prima facie* case, Defendant has provided a legitimate, nondiscriminatory reason for the suspension -- Plaintiff's admitted violation of company policy by reading the paper and eating while not on break. Plaintiff does not produce evidence that such rationale is pretextual. Taking the facts and inferences in a light most favorable to Plaintiff, a reasonable jury could not find race discrimination based upon the September suspension.

### b. October Suspension

On October 14, 2003, Supervisor Sobkowiak suspended Plaintiff for five days for building a barbeque grill during work hours without permission. According to company policy, employees may do personal work on company time only with permission, and usually for short time periods. Plaintiff admitted that he did not obtain approval to build the barbeque during work hours, testifying "No,

didn't no one tell me to make it or I didn't ask no one to make it." Pl. Dep., at 482:24-483:15.

Plaintiff argues that the five-day suspension was discriminatory because other employees worked on personal projects during work hours without punishment. Plaintiff contends that co-worker Keith Simmons sold meat and rationed out doughnuts to other employees during work time, and co-worker Kerry Kozicki tested and replaced Christmas light bulbs during work time. As with the September suspension, Plaintiff has not demonstrated that these individuals are similarly situated. Plaintiff did not allege that any other maintenance employee specifically built a grill, another comparable large personal project, or that these other projects required multiple hours during one shift. Additionally, Plaintiff did not present evidence that these individuals worked on the personal projects without permission, or that supervisors were even aware of such activities.

Plaintiff also alleges that supervisors asked him to do personal work for them on company time. Mark Pawelski assigned Plaintiff the task of welding chairs, and that Dave Pope assigned Plaintiff the task of repairing metal. However, Pawelski and Pope are supervisors and are not similarly situated to Plaintiff. Further, this work was obviously authorized as it was specifically requested by supervisors.

For these reasons, Plaintiff has not presented evidence that Defendant treated similarly situated employees outside of Plaintiff's class more favorably, and has not made a *prima facie* case of discrimination based upon his suspension. Even if Plaintiff had made a *prima facie* case, Defendant has identified a legitimate, nondiscriminatory reason for the suspension -- Plaintiff's violation of company policy by spending significant company time on a personal project without permission. Even when the facts and inferences therefrom are interpreted in a light most favorable to Plaintiff, the evidence does not support a finding of race discrimination. Defendant's Motion for Summary Judgment is **GRANTED** on Counts III and IV.

### 3. Retaliation Claims

Counts V and VI of Plaintiff's amended complaint present retaliation claims pursuant to Title VII and 42 U.S.C. § 1981. A plaintiff can pursue a retaliation claim using either the direct or indirect method to establish discriminatory intent. *See Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Plaintiff presented no direct evidence of retaliation. Under the indirect method, Plaintiff can establish a *prima facie* case of retaliation by showing that "(1) [he] engaged in statutorily protected activity; (2) [he] was performing her job according to . . . legitimate expectations; (3) despite [his] satisfactory performance, [he] suffered an adverse employment

action; and (4) [he] was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Luckie v. Ameritech Corp.*, 389 F.3d 708, 714 (7th Cir. 2004).

Statutorily protected expression can include informal grievances to supervisors. *See Laird v. Cragin Federal Bank*, Nos. 94-1321 & 1556, 1994 WL 609920 at *6 (7th Cir. Nov. 3, 1994). It is undisputed that Plaintiff complained to various supervisors on multiple occasions from 2002 on. The content of his complaints is disputed, as is the date on which Defendant received notice of Plaintiff's race-based allegations. However, Plaintiff has satisfied element one because a reasonable jury could conclude that Plaintiff engaged in statutorily protected activity. Element two is undisputed by Defendant.

Plaintiff must also show that he suffered an adverse employment action and was treated less favorably than similarly situated employees who did not complain to management. Plaintiff's complaint alleges three retaliatory instances: the two suspensions (discussed above) and the refusal to provide overtime opportunities in February 2004. Under Seventh Circuit law, actionable adverse employment actions must be materially adverse, such as "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or

- 18 -

other indices that might be unique to a particular situation."
*Oest v. Ill. Dep't of Corrections*, 240 F.3d 605, 612-13 (7th Cir. 2001)(citation omitted).

Plaintiff's two suspensions would constitute adverse employment actions. However, as discussed at length *supra*, Plaintiff has not established that there exist any similarly situated employees who were treated differently (or more favorably) than Plaintiff as to either suspension. Accordingly, Plaintiff cannot establish a *prima facie* case of retaliation based upon such actions. Further, Defendant has asserted legitimate, non discriminatory rationale for the suspensions, which Plaintiff has not rebutted.

Plaintiff also contends that supervisors withheld overtime from Plaintiff in February 2004. From the Court's research, it appears that the Seventh Circuit has not definitively addressed the issue of whether this would constitute an adverse action, and the parties have not addressed it. Because Plaintiff cannot prove that he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity, the Court need not resolve this issue. To be eligible for overtime, an employee must first work a full forty hour week. It is undisputed that Plaintiff worked less than forty hours during two weeks of February 2004. Plaintiff does not demonstrate that others were similarly situated. There is no allegation that another maintenance

department employee who did not complain received overtime in February when they worked less than forty hours or were available only a fraction of the month. There is also no allegation that other employees who received overtime were comparable in terms of skill, training, and availability, or that he was equally qualified for the particular overtime tasks on the weeks he was eligible. The evidence in the record actually demonstrates that Plaintiff was treated better than the other employees who did not complain of discrimination -- Plaintiff was the maintenance department employee with the highest overtime pay in December 2003 and January 2004, and had the second highest amount of overtime overall in 2003. Taking the facts and inferences in the light most favorable to Plaintiff, he cannot make a *prima facie* case of retaliation based upon overtime opportunities or the two suspensions.

Finally, the Court notes that Plaintiff attempts to raise the several new retaliatory actions in his opposition memorandum and materials -- his December 2004 performance review, his placement on a wellness plan, and allegedly disparate work assignments. The Court disregards these allegations because they were not pled in the complaint. "A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996). Further, these allegations do not constitute materially adverse employment actions even if properly pled. Plaintiff did

not suffer any negative economic consequences due to these alleged actions. To the contrary, Plaintiff got a raise despite the review and placement on the wellness program. He also did not lose any benefits, have diminished material responsibilities, and he was not terminated. "Unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions." *Grube v. Lau Indus. Inc.*, 257 F.3d 723, 729 (7th Cir. 2001). Defendant's Motion for Summary Judgment is **GRANTED** on Counts V and VI.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's and Defendant's Motions to Strike are **DENIED AS MOOT**. Defendant's Motion for Summary Judgement is **DENIED** on Counts I and II, and **GRANTED** on Counts III, IV, V, and VI of Plaintiff's Second Amended Complaint. **IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: June 2, 2005

- 21 -